IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00586-PAB-NYW

CAROLYN BALDWIN, individually and as next friend of
J.D.B, Jr., her minor child,

    Plaintiffs,

v.

ATHENS GATE BELIZE, LLC and
PELICAN REEF MANAGEMENT, LLC,

    Defendants.

---

# ORDER

---

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 38], Defendants' Motion to Dismiss for *Forum Non Conveniens* [Docket No. 39], and Plaintiffs' Motion to Conduct Jurisdictional Discovery [Docket No. 58]. Plaintiffs filed a combined response to defendants' motions to dismiss [Docket No. 62], to which defendants replied. Docket No. 66.

## I. BACKGROUND

This dispute arises out of a tragic accident that occurred in San Pedro, Belize at a vacation resort called Athens Gate Resort ("the resort"). Docket No. 21 at 3, ¶ 11; *id.* at 7, ¶ 39. Plaintiffs allege that both defendants – Pelican Reef and Athens Gate Belize – own and operate the resort. *Id.* at 2, ¶¶ 4-5.[1] The resort owns and maintains a pier

---

[1]Defendants deny that they own or operate the Athens Gate resort or the pier from which Ms. Baldwin dove. Docket No. 38 at 1. When evaluating whether plaintiffs have made a prima facie showing of personal jurisdiction, "the court is bound to resolve

that leads from the beach into the ocean. *Id.* at 6, ¶ 27. On June 4, 2017, plaintiff Carolyn Baldwin dove from the pier into the ocean and hit her head on the ocean floor. *Id.* at 7, ¶ 39. She suffered a burst fracture of her cervical spine at the C5 vertebrae, which caused immediate paralysis from the neck down. *Id.*

Ms. Baldwin's stay in Belize was planned by Ms. Kristin Viger. *Id.* at 3, ¶ 9. When planning the trip, Ms. Viger landed on the resort website after clicking on an advertisement for the resort on TripAdvisor.com. *Id.* at 4, ¶ 12. The resort website allows potential customers to complete the reservation process via the website and also allows customers to ask questions, request information, and receive responses from resort personnel. *Id.*, ¶ 14. Ms. Viger called a phone number listed on the resort's website, which directed her to a call center in Houston, Texas. *Id.*, ¶ 15. Ms. Viger booked the trip and completed payment for one half of the total cost of the trip. *Id.*, ¶ 17. Employees of the resort subsequently emailed Ms. Viger to remind her to complete the remaining payment, *id.* at 5, ¶ 20, which Ms. Viger did by contacting the call center again. *Id.* at 4, ¶ 18. During each of these telephone calls, Ms. Viger was physically located in Colorado. *Id.*, ¶ 19. The call center representative was aware that Ms. Viger was located in Colorado. *Id.*

Plaintiffs claim that there are no warning signs against diving or swimming from the pier, *id.* at 6, ¶ 31, and alleges that, at no point during Ms. Baldwin's visit was she warned by resort employees about diving off of the pier. *Id.*, ¶ 33; *id.* at 7, ¶ 36. Plaintiffs filed this lawsuit on March 9, 2018 raising claims of (1) negligence under

---

all factual disputes in favor of the plaintiff." *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

Texas law; (2) gross negligence under Texas law; (3) vicarious liability under Texas law; and (4) loss of parental consortium. Docket No. 2 at 8-10. On September 6, 2018, defendants filed their motion to dismiss for lack of personal jurisdiction [Docket No. 38] and their motion to dismiss for *forum non conveniens*. Docket No. 39.

## II. LEGAL STANDARD – PERSONAL JURISDICTION

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether a court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff can satisfy its burden by making a prima facie showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The court will accept the well-pleaded allegations of the complaint as true in determining whether plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look further. *Id.* The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Dudnikov*, 514 F.3d at 1070. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Id.*

## III. ANALYSIS

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether

the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). Plaintiffs claim that the Court has personal jurisdiction over defendants under the Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124. Docket No. 21 at 3, ¶ 7. Defendants argue that the long-arm statute does not confer personal jurisdiction here because there was no "commission of a tortious act within [the] state" under § 13-1-124(1)(b). Docket No. 38 at 4. Plaintiffs contend that the long-arm statute does allow for the Court to exercise personal jurisdiction over defendants because defendants engaged in the "transaction of any business" within Colorado under § 13-1-124(1)(a). Docket No. 62 at 16.

The Court finds that neither argument is on point. The Colorado long-arm statute has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. *Shaw v. Vircurex*, No. 18-cv-00067-PAB-SKC, 2019 WL 2636271, at *2 (D. Colo. Feb. 21, 2019). Plaintiffs argue that the Court has both specific and general personal jurisdiction over defendants. Docket No. 21 at 3, ¶ 7.

### A. Specific Jurisdiction

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). The specific jurisdiction analysis is two-fold. First, the Court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). Second, if defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over defendant offends "traditional notions of fair play and substantial justice." *Id.* at 105. This latter inquiry requires a determination of whether the Court's exercise of personal jurisdiction over the defendant is "reasonable" in light of the circumstances of the case. *Id.*

Plaintiffs argue that the Court has specific personal jurisdiction over defendants based on defendants' maintenance of an "interactive website" plus other contacts with the state of Colorado. Docket No. 62 at 16. In support of their argument, plaintiffs cite several cases that rely on *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.

Supp. 1119 (W.D. Pa. 1997), which created a "sliding scale" based on website interactivity to determine whether a defendant's maintenance of a website is sufficient to confer personal jurisdiction over a defendant. In cases concerning "interactive Web sites where a user can exchange information with the host computer," *Zippo* stated that "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* at 1124. Under *Zippo*, a "passive" website "that does little more than make information available . . . is not grounds for the exercise [of] personal jurisdiction," but a more interactive website, "where a defendant clearly does business over the Internet" can confer personal jurisdiction. *Id.*; *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (describing *Zippo* as "a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site").

The Tenth Circuit has not adopted the *Zippo* test, *see Shrader v. Biddinger*, 633 F.3d 1235, 1242 n.5 (10th Cir. 2011) ("This court has not taken a definitive position on the *Zippo* sliding-scale test."), and other district courts in this circuit have declined to apply the test. *See ClaimSolution, Inc. v. Claim Sols.*, LLC, 2017 WL 2831330, at *3 (D. Kan. June 30, 2017) ("The Court . . . conclude[s] that the analysis is more appropriately governed by the standards set forth by the Tenth Circuit in *Shrader*."). In *Shrader*, Tenth Circuit "look[ed] to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Shrader*, 633 F.3d at 1241. This test requires a showing that (1) there was an intentional act; (2) that was expressly aimed at

the forum state; (3) with "knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072. Under *Shrader*, "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Shrader*, 633 F.3d at 1241.

The Court agrees that *Zippo* is limited in its ability to guide modern internet-based personal jurisdiction inquiries. *Zippo* was decided over twenty years ago and, in the years since, the internet has expanded and changed immensely. *See, e.g., Zippo*, 952 F. Supp. at 1123 (describing the internet as "a global 'super-network' of over 15,000 computer networks used by over 30 million individuals, corporations, organizations, and educational institutions worldwide" (internal quotation omitted)); *see also Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167, 1174 (D. Utah 2016) ("The *Zippo* test effectively removes geographical limitations on personal jurisdiction over entities that have interactive websites. And because the number of entities that have interactive websites continues to grow exponentially, application of the *Zippo* framework would essentially eliminate the traditional geographic limitations on personal jurisdiction."). The effect of applying *Zippo* to website-based personal jurisdiction cases today would permit numerous defendants to be haled in to court in practically any jurisdiction in the country, so long as the defendant's website was deemed sufficiently "interactive." Such a practice would "resemble[] a loose and spurious form of general jurisdiction." *Bristol-Myers Squibb*, 137 S. Ct. at 1781. Thus, the Court applies the *Shrader* framework in determining whether the Court has personal

jurisdiction here.

First, the Court must determine whether defendants have such minimum contacts with Colorado that they "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen*, 444 U.S. at 297. Under the *Shrader* test, the Court looks to whether defendants purposely directed their activities at the forum state – in other words, whether the defendants engaged in an intentional act, aimed at the forum state, with knowledge that the brunt of the injury would be felt in the forum state. *Shrader*, 633 F.3d at 1240.

The Court finds that defendants do not have such minimum contacts with Colorado and did not direct their activities at the forum state such that they should reasonably anticipate being haled into court here. While plaintiffs allege that, "[u]pon information or belief, [the resort] directly markets to potential customers located in the state of Colorado and derives a significant portion of its business from the state of Colorado," Docket No. 21 at 5, ¶ 24, they do not allege that defendants target Colorado to a greater degree than other states. *See Boppy Co. v. Luvee Prods. Corp.*, No. 04-MK-320, 2004 WL 2608265, at *4 (D. Colo. May 25, 2004) ("[T]he Court notes that many cases recognize that the 'purposeful' element is not satisfied by an interactive website that is generally available to persons nationwide (much less worldwide) but which does not specifically target residents of the forum state to a degree greater than any other users."). The complaint does not allege that the resort's website contained Colorado-specific information or that the resort's advertisements were directed to Colorado residents in particular such that the forum state was intentionally targeted by defendants. *See* Docket No. 21.

Rather, the complaint states that "Ms. Viger began the process" of booking the trip by independently conducting research on TripAdvisor.com. Docket No. 21 at 3, ¶ 10. It was Ms. Viger who purposefully visited the resort website after clicking on a resort advertisement. *Id.* at 4, ¶ 12. There is no allegation, however, that this advertisement was targeted at Colorado or Colorado residents. *See id.* Further, Ms. Viger made three telephone calls to the Houston call center to book the trip. *Id.*, ¶¶ 15-18.[2] Under these facts, the Court cannot conclude that defendants engaged in an intentional act deliberately aimed at the forum state so as to render them subject to Colorado's personal jurisdiction.

Even under *Zippo*, personal jurisdiction over defendants would be lacking. Plaintiffs have not alleged in their complaint that any business was conducted between plaintiffs and defendants through the resort website. The complaint states that "Ms. Viger utilized [the resort] website to read reviews, scan pictures of the accommodations, analyze the resort's features, and ultimately make the final determination to select [the resort] as the group's destination." Docket No. 21 at 4, ¶ 13.[3] But to book the trip – i.e.,

---

[2] Plaintiffs also allege that "the Houston call center representative was aware that Ms. Viger was calling from Colorado," Docket No. 21 at 4, ¶ 19, and that "[e]mployees of Athens Gate Resort, and thus, Defendants, emailed Ms. Viger in April of 2017 as a reminder to complete the second half of the payment for the trip." *Id.* at 5, ¶ 20. These allegations do not establish that defendants are subject to personal jurisdiction in Colorado. The minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

[3] While plaintiffs allege that the resort's website is "fully interactive" because it "allows customers to complete the entire reservation process, ask questions, request information, and receive responses from Athens Gate Resort personnel," Docket No. 21 at 4, ¶ 14, plaintiffs do not allege that they participated in any of this interactivity. *See id.*

9

to conduct the business transaction – Ms. Viger "called the phone number listed on the [the resort] website," *id.*, ¶ 15, and, two days later, completed the transaction over the telephone. *Id.*, ¶ 17. In these circumstances, the website "[did] little more than make information available to those who are interested," which, under *Zippo*, "is not grounds for the exercise [of] personal jurisdiction." *Zippo*, 952 F. Supp. at 1124; *see also ClaimSolution*, 2017 WL 2831330, at *3 (finding that, even under *Zippo*, exercise of personal jurisdiction was improper because "plaintiff has provided no evidence that defendant clearly does business over the internet and thus enters into contracts with residents of the forum state . . . the only evidence is that defendant's website is passive with respect to Kansas residents, and such a website does not confer personal jurisdiction under the *Zippo* test").[4] As a result, the Court finds that it does not have specific personal jurisdiction over defendants.

B. **General Jurisdiction**

In the alternative, plaintiffs contend that the Court has general personal jurisdiction over defendants. Docket No. 21 at 3, ¶ 7. To establish such jurisdiction, plaintiffs must demonstrate that defendants maintain "continuous and systematic general business contacts" in the state. *OMI Holdings, Inc. v. Royal Ins. Co. of*

---

[4]In addition, plaintiffs state that "the Resort website and its interlinkage with TripAdvisor.com[] have been alleged to create an 'active' website. That allegation has not been materially rebutted or addressed by the Defendants in their Jurisdictional Motion." Docket No. 62 at 17. But it is plaintiffs who bear the burden of establishing personal jurisdiction, *Rambo*, 839 F.2d at 1417 (10th Cir. 1988), and an allegation that the resort website is "interactive" is insufficient to make a prima facie showing of personal jurisdiction. And, as stated above, the Court does not look to whether the resort website is "active" or "interactive," but whether defendants purposely directed an intentional act at the forum state. Here, defendants did not do so.

*Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  Such contacts must be "so continuous and systematic as to render [defendants] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (alteration marks omitted).  To determine whether a foreign defendant is "at home" in the forum state, the Tenth Circuit considers the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 457 (10th Cir. 1996).  The Tenth Circuit has emphasized that, in analyzing general jurisdiction based upon the operation of a commercial website, "the commercial contacts . . . must be of a sort 'that approximate physical presence' in the state – and 'engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders.'" *Shrader*, 633 F.3d at 1243 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).

First, the Court finds that defendants are not subject to Colorado's general jurisdiction through the traditional avenues of general physical contacts with the forum state.  Defendants submitted a declaration from Greg Drake, the director of Athens Gate Limited,[5] Docket No. 38-1 at 1, ¶¶ 1-2, in which he asserts that defendants do not have an office or any employees in Colorado.  *Id.* at 3, ¶ 7.  He also states that, "[t]o the

---

[5]According to Mr. Drake, Athens Gate Limited provides property management services to Athens Gate Condominium, where Ms. Baldwin stayed during her trip. Docket No. 38-1 at 1, ¶ 2.

11

extent that [defendants have] any contact with any person from Colorado, it has been solely by virtue of funds being deposited" into defendants' bank accounts. *Id.*[6] The Court finds that plaintiffs have not shown that defendants are so physically connected to Colorado so as to render them essentially at home here. *See Elec. Payment Sys., LLC v. Elec. Payment Sols. of Am., Inc.*, No. 14-cv-02624-WYD-MEH, 2015 WL 5444278, at *3 (D. Colo. Sept. 16, 2015) (defendant's contacts insufficient to support general jurisdiction where defendant had no offices in Colorado, did not own or lease property in Colorado, had no employees or agents in Colorado, and did not pay taxes or have a bank account in Colorado).

Further, defendants' maintenance of a widely accessible website does not render them essentially at home in the forum state. "By its very nature, the internet allows individuals and businesses to create a presence that is visible throughout the United States and the world." *Kindig*, 157 F. Supp. 3d at 1176. "[T]he availability of a website in any forum is similar to 'stream of commerce cases' where the defendant distributes products into the national stream of commerce." *Id.* But "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully

---

[6]Plaintiffs have limited their argument in response to defendants' motion to dismiss to address only specific personal jurisdiction, *see* Docket No. 62 at 15-18, and do not challenge the facts set out in Mr. Drake's declaration. *See id.*; *see also* Docket No. 58 (plaintiffs not raising general jurisdiction arguments in motion for jurisdictional discovery). Because there is no factual dispute regarding defendants' physical presence in Colorado, the Court need not construe these facts in plaintiffs' favor. *See Sanchez v. White Cty. Med. Ctr.*, 730 F. App'x 656, 659 n.3 (10th Cir. 2018) (unpublished) (noting that, "[f]or purposes of evaluating a defendant's contacts with the forum, plaintiffs' allegations must be taken as true to the extent they are uncontroverted by the defendant's affidavits," but because "plaintiffs did not present an affidavit" challenging defendants' affidavits, the court "need not construe this dispute in plaintiffs' favor.").

12

directed toward the forum State.  Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State . . . [b]ut a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."  *New Belgium Brewing Co., Inc. v. Travis Cty. Brewing Co., LLC*, No. 15-cv-00272-MEH, 2015 WL 2106329, at *6 (D. Colo. May 1, 2015) (quoting *Asahi*, 480 U.S. at 112).  Similarly, the mere maintenance of the resort website, without more, will not render defendants "at home" in the forum state absent additional conduct that would indicate an intent or purpose to serve the market in the forum state.

"When general jurisdiction is based on Internet activity, the Tenth Circuit has favored a requirement that 'the defendant [must have] actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum.'"  *Velasco Briseno v. Mktg. and Mgmt. Sols, LLC*, 2019 WL 2646661, at *4 (D. Kan. June 27, 2019) (quoting *Shrader*, 633 F.3d at 1243) (emphasis omitted).  There is no indication that defendants have done so.  Moreover, plaintiffs have not alleged any "additional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State."  *New Belgium Brewing*, 2015 WL 2106329, at *6.  Plaintiffs have simply alleged that defendants maintain a website that is accessible to Colorado residents.  Without more, the Court cannot find that personal jurisdiction exists over defendants here.  *See Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012) (unpublished) ("The fact that a

particular website displays an advertisement that is viewable in Georgia or shows a company that does business in Georgia does not, by itself, mean that the website owner had any contact with Georgia.").

C.  **Motion to Conduct Jurisdictional Discovery**

Plaintiffs have filed a Motion to Conduct Jurisdictional Discovery [Docket No. 58] requesting the Court to "permit [discovery] so that it may render its decision on the jurisdictional issues from a more informed perspective."  Docket No. 58 at 5.  Plaintiffs seek additional discovery on (1) "determining which person or entity is responsible for directing the repeated solicitations, communications, and business dealings with Ms. Viger on the Resort's behalf"; (2) "identifying the scope and extent of the Defendants' and the Resort's purposeful direction of their business activities at the state of Colorado"; and (3) "the benefits received by the Defendants and the Resort from their business activities directed at the state of Colorado."  *Id.* at 4.[7]

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion."  *Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1227 (D. Colo. 2009) (quoting *Budde v. Ling-*

---

[7]Plaintiffs also request additional discovery on issues related to the business and factual relationship between defendants and another entity, Athens Gate Limited.  *See* Docket No. 58 at 4.  This request is likely in response to defendants' argument in their motion to dismiss that defendants "do not own or operate the Athens Gate condominium and do not own the pier from which [Ms. Baldwin] dove."  Docket No. 38 at 1.  Because the Court construes plaintiffs' allegations that defendants own and operate the resort and pier, Docket No. 21 at 2, ¶¶ 4-5, as true,  *see AST Sports Science*, 514 F.3d at 1057, the Court has not reached defendants' arguments in deciding its motion to dismiss.  Because these issues would have no effect on the basis for the Court's finding of no personal jurisdiction, the Court will not address plaintiffs' request for additional discovery on these issues.

*Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)). "In determining whether to allow jurisdiction discovery[,] however, the trial court 'is vested with broad discretion.'" *Id.* An abuse of discretion occurs upon the denial of jurisdictional discovery "if the denial results in prejudice to a litigant." *Sizova v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). "Prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Id.* "To obtain jurisdictional discovery, a plaintiff must 'present a sufficient factual predicate for the establishment of personal jurisdiction.'" *Serv. First Permits, LLC v. Lightmaker Vancouver (Internet) Inc.*, No. 18-cv-02089-CMA-NYW, 2019 WL 109335, at *2 (D. Colo. Jan. 4, 2019) (quoting *Gordon * Howard Assocs. v. Lunareye, Inc.*, No. 13-cv-01829-CMA-MJW, 2013 WL 5637678, at *4 (D. Colo. Oct. 15, 2013)). "The Court will not permit jurisdictional discovery if there is only a 'low probability' that additional discovery would reveal sufficient facts to alter the Court's conclusion that it lacks personal jurisdiction" over defendants. *Gordon*, 2013 WL 5627678, at *4 (citing *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004)).

In their motion for jurisdictional discovery, plaintiffs set forth a legal argument that mirrors much of the argument contained in their response to defendants' motion to dismiss. *See* Docket No. 58 at 6-8. But plaintiffs have failed to present a sufficient factual predicate to support their argument that this Court has personal jurisdiction over defendants. The only factual argument that plaintiffs make is an argument that "there were a multitude of additional contacts, including two payments of money, between

15

someone acting on behalf of the Resort and Ms. Viger, [that] occurred in connection with Ms. Baldwin's visit to the resort." Docket No. 58 at 8. First, this factual allegation is part of plaintiffs' argument that, under *Zippo*, the combination of the maintenance of a website plus some other forum contacts is sufficient to support a finding of personal jurisdiction. *See id.* at 7-8. As set out above, *Zippo* is both inapplicable here and unavailing to plaintiffs. Moreover, these factual allegations do not convince the Court that jurisdictional discovery could reveal sufficient facts to alter its conclusion that it lacks personal jurisdiction over defendants. Even if these allegations were true, such minimal contacts would be insufficient to find that defendants' contacts with Colorado were "so continuous and systematic" so as to render defendants "essentially at home" in the state. *Daimler AG*, 571 U.S. at 139. As a result, the Court will not exercise its discretion to permit jurisdictional discovery here. *See Gordon*, 2013 WL 5637678, at *4 (denying jurisdictional discovery where new factual allegations, even if true, would not demonstrate that defendant was at home in forum state).

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 38] is **GRANTED**. It is further

**ORDERED** that Plaintiffs' Motion to Conduct Jurisdictional Discovery [Docket No. 58] is **DENIED**. It is further

**ORDERED** that Defendants' Motion to Dismiss for *Forum Non Conveniens* [Docket No. 39] is **DENIED AS MOOT**. It is further

**ORDERED** that, within 14 days of this Order, defendants may have their costs by filing a Bill of Costs with the Clerk of Court. It is further

**ORDERED** that this case is closed.

DATED September 24, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge